Filed 1/22/25  P. v. Gowolo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTIN GUMALADO GOWOLO,<br><br>    Defendant and Appellant. | D082490<br><br><br><br>(Super. Ct. No. SCD288656) |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Amanda Lloyd, and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Martin Gumalado Gowolo of driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 1), driving with a measurable blood alcohol level of 0.08 or greater causing

injury (Veh. Code, § 23153, subd. (b); count 2), hit and run with injury (Veh. Code, § 20001, subd. (a); count 3), hit and run (Veh. Code, § 20002, subd. (a); counts 4 and 5), driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count 6), driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 7), and driving with a measurable blood alcohol level of 0.08 or greater (Veh. Code, § 23152, subd. (b); count 8). The jury additionally found that Gowolo personally inflicted great bodily injury (Pen. Code[1], §§ 12022.7, subd. (a), 1192.7, subd. (c)(8)) and drove with a blood alcohol level of 0.15 or greater (Veh. Code, § 23578) during the commission of counts 1 and 2.

The trial court found that Gowolo had a serious felony prior conviction (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and two strike priors (§§ 667, subds. (b)–(i), 1170.12, 668). In July 2023, the court sentenced Gowolo to 14 years in state prison.

On appeal, Gowolo contends the court abused its discretion in denying his petition for writ of error *coram nobis*, which sought to vacate the prior convictions from 2009 that led to the strike priors. He also argues the court abused its discretion in failing to consider a presumptive low-term sentence based on his alleged childhood trauma and mental illness. We disagree and affirm the judgment.

FACTUAL BACKGROUND

I.

*2009 Guilty Plea and Sentencing*

On May 5, 2009, Gowolo drank heavily and then tried to stab his wife with a kitchen knife. He continued to drink the next day and told his wife he

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

was going to kill her and then kill himself.  He doused her with lighter fluid but was restrained by two of his sons before he could light her on fire.

Gowolo eventually decided to plead guilty to multiple charges and the court questioned him as follows:

> "Q.       Your conviction in this case will be considered to be a serious felony, in other words, a strike, which means it will result in a mandatory denial of probation and substantially increase penalties in any future felony case.
>
> "Do you understand that?
>
> "A.       Yes.
>
> "[Counsel:]      And, your honor, he is pleading to two strikes.
>
> "By the Court:
>
> "Q.       That would be considered to be two strikes with this plea.  Do you understand that?
>
> "A.       I didn't get that.  What does that mean?
>
> "The Court:     Let you talk to your attorney for a moment.
>
>      (Brief pause in proceedings)
>
> "The Defendant: Oh, okay.
>
> "By the Court:
>
> "Q.       Do you understand that means if you have another felony conviction, you would face 25 years to life in prison?
>
> "A.       Okay.  Yes."

The court then found Gowolo had made a knowing, intelligent, and voluntary waiver of his constitutional rights and accepted the plea.  It later sentenced him to four years and eight months in prison.

## II.

### *Motion Hearing*

In 2020, Gowolo faced new charges related to two instances of drinking and driving. Prior to trial, he filed a combined motion to strike his prior strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and motion to vacate his prior convictions (via a writ of error *coram nobis*). Therein counsel asserted that during the 2009 case when Gowolo pleaded guilty to two strikes, he did not understand how strikes worked. Counsel explained that Gowolo is a refugee from what is now known as South Sudan and that Gowolo did not have a Bari interpreter to assist him during the 2009 change of plea hearing.

The court denied both motions, and the case proceeded to trial.

## III.

### *Trial*

A. Prosecution Evidence

On September 4, 2020, a San Diego Police officer saw Gowolo's vehicle swerving on the I-15 freeway and pulled him over after he nearly hit median barriers while merging onto the I-8 freeway. Gowolo failed a horizontal nystagmus evaluation and field sobriety tests. He submitted to a preliminary alcohol screening (PAS) breath test that showed his blood alcohol concentration (BAC) at 0.17 percent and was arrested. Two subsequent Intoxilyzer breath tests performed approximately four minutes apart showed BAC readings of 0.151 percent.

On January 1, 2021, Gowolo was driving down a San Diego city street. He hit two parked cars and then swerved out and sideswiped the driver's size of Marissa S.'s vehicle, which was traveling in the opposite direction. Marissa pulled over, but Gowolo did not stop. Daniel W. got out of the back

4

seat of Marissa's car and ran after him. Daniel saw Gowolo strike another vehicle before colliding with a blue sedan, which then spun out in the intersection. Gowolo continued driving until his front, driver's side wheel fell off, causing his vehicle to stop.

Daniel, who had continued chasing him, found Gowolo revving his engine in his car, even though it was disabled, and the airbags had deployed. Other observers called the police, and Daniel and a nearby resident held Gowolo's door closed until the police arrived because they were afraid he would flee the scene.

O.V. was the driver of the blue sedan Gowolo hit. His airbags deployed and broke both of his arms. He heard a paramedic refer to them as "spaghetti arms."

A responding officer testified that Gowolo smelled faintly of an alcoholic beverage and sat with his face in his hands repeating, "I'm done. I'm done." Gowolo agreed to a PAS, and his BAC registered at 0.25. The officer arrested Gowolo. At the station, Gowolo registered a 0.226 and 0.238 on Intoxilyzer breath tests.

A police officer who inspected Gowolo's vehicle discovered a cooler in the front passenger seat area with an unopened bottle of brandy and two cans of strawberry margarita. The open trunk area contained an empty can of the strawberry margarita drink, an empty bottle of brandy, and another alcohol container.

A DMV employee testified that Gowolo's driver's license had been revoked since 2018 and that Gowolo was aware of that fact.

B. Defense Evidence

Gowolo testified with the assistance of a Bari interpreter as the sole defense witness. He said that on the evening of the September 2020 incident,

5

he was returning home after dropping off a friend. He thought he was driving well before the police officer stopped him. Although he told the officer he had not been drinking, he admitted he had taken a narcotic pain medication for issues with his right hand and left leg. He did not know how he did on the field sobriety tests, although he did explain to the officer that he had issues with his leg.

On January 1, 2021, Gowolo went to his friend's house where his friend gave him a birthday gift of alcohol and $20 to buy more alcohol. They drank together, and then he bought the additional items that were found in the car. As he was driving home, he said his car started to make a strange sound and his brakes and steering were not working. The car went left and right and, after nearly hitting a truck, he found a place to park.

Gowolo said people were running after his car telling him to stop. After his car stopped, the airbags went off. He said he tried to get out because the airbag was hot and he thought the car was going to explode, but the people closed his door and would not let him out. Eventually he got out through the passenger door and then sat on the sidewalk until the police arrived.

He told an officer he did not know what happened but, "[j]ust seeing this, that means my life is done." He said this because he had heard the "boom sound" as he hit cars in the road and did not know how many cars he had hit. According to Gowolo, he had only had one shot of brandy and a strawberry margarita, but he later admitted he was drunk.

IV.

*Alleged Childhood Trauma and Mental Illness*

Gowolo never mentioned childhood trauma due to war, but his defense counsel claimed in briefing and argument for the pretrial motions and at sentencing that Gowolo experienced such trauma. He argued that because

6

Gowolo "was born into the middle of the First Sudanese Civil War," he "no doubt . . . suffered ghastly childhood trauma as a result." He also cited to statements Gowolo had made regarding his family life, although Gowolo's reports to two different probation officers conflicted as to whether he was in fact emotionally abused by an uncle or uncles who raised him after his mother died.

Counsel further claimed "Gowolo is haunted by past trauma and drinks to cope with that trauma." On appeal, Gowolo asserts that this alcoholism is recognized as a mental illness and can also be a form of contributing psychological trauma.

DISCUSSION

I.

*Petition for Writ of Error Coram Nobis*

Gowolo contends the court abused its discretion in denying his petition for writ of error *coram nobis*. Specifically, he insists that the court's reliance on his apparent ability to understand English in 2022 was irrelevant to whether he required an interpreter in 2009 when he pleaded guilty to the prior strike convictions.

Although they acknowledge the reasoning behind the court's denial could have been better stated, the People argue the court did not abuse its discretion. We agree.

A. Additional Facts

In the petition for writ of error *coram nobis*, counsel asserted that Gowolo had written to the court in October 2009 and specifically claimed that he did not understand the meaning of his convictions based on a language

7

barrier,[2] but that no inquiry into his ability to understand had been made. Given that Gowolo required an interpreter for the 2022 hearing, counsel argued it was logical to infer he also required one in 2009.[3] Counsel, therefore, requested that the court find that Gowolo's plea was not knowing and voluntary.

In its opposition brief, the prosecution highlighted that Gowolo appeared to understand and speak English during the May 2009 hearing and the sentencing hearing and that he had not requested an interpreter at either or raised concerns about his counsel or plea. The prosecution also provided the probation officer's report, reflecting statements Gowolo had made in English, as well as evidence of the language proficiency requirements for his employment. Gowolo had told the probation officer he did not have an opportunity to explain his side of the story or to read the plea agreement, he was pressured into pleading guilty, and his attorney did not explain the consequences of pleading guilty. However, the prosecution pointed out that there is no mention in the report of Gowolo having difficulty understanding the probation officer or requesting an interpreter.

---

[2] With someone else's help in writing the letter, Gowolo explained that only when he saw his "counselor" was he "made fully aware of [his] sentence." He wrote that he knew he had pleaded guilty, but that he thought he would be sentenced to four years and 80 days, not four years and eight months. He felt his defense attorney "knew I did not 'completely' understand him" and said he "pleaded guilty without understanding the consequences."

[3] We note that the interpreter did not provide simultaneous translation during the 2022 hearing. Rather, as his attorney explained at the beginning of the subsequent trial, having the interpreter present during the hearing was "useful" because it helped "when there [were] discussions about legal issues, strike priors, that kind of thing. So he kind of interprets. Mr. Gowolo will ask him questions."

The prosecution went on to argue that a writ of *corum nobis* was not appropriate because it could not be used to correct an error of law, and Gowolo had asserted a violation of his right to an interpreter under the California Constitution. If anything, the prosecution viewed the proper remedy as habeas corpus. Should the court disagree, the prosecution asserted that Gowolo had not met the factors required for granting a writ set forth in *People v. Shipman* (1965) 62 Cal.2d 226 (*Shipman*). As to the *Romero* motion, the prosecution argued it was premature.

The original prosecutor, probation officer, and defense attorney all presented testimony at the November 2022 evidentiary hearing before a different judge than the one who ultimately presided over Gowolo's trial. Gowolo testified that he was not instructed in English while living in Sudan and did not learn English until he attended a school in San Diego for four months in 2002. He claimed he asked the public defender for an interpreter and that the only thing he understood from the attorney's explanation of the plea form was that if he did not sign where the attorney indicated, he would go to jail for 17 years. According to Gowolo, he only heard about strikes after he was released when his probation officer described them. He could not, however, explain the significance of a strike during the hearing or how much time he was facing in the current case.

On cross-examination, Gowolo admitted he had been arrested twice before the 2009 incident and had signed at least one guilty plea for driving under the influence. He acknowledged having learned how to say, "I don't speak English" but said he did not tell the judge in 2009 that he did not

9

speak English because he thought "the dependent" would do so.[4]  Although he told the probation officer he felt forced into taking the plea, he did not tell that to his attorney or the judge at the sentencing hearing.

At the conclusion of the hearing, the court denied the motion to strike the prior convictions.  The court observed that Gowolo had not used the interpreter during the hearing and, thus, said it was not persuaded that he needed an interpreter.

B.  Legal Principles

"The writ of error *coram nobis* is a nonstatutory, common law remedy whose origins trace back to an era in England in which appeals and new trial motions were unknown."  (*People v. Kim* (2009) 45 Cal.4th 1078, 1091 (*Kim*).) "The grounds on which a litigant may obtain relief via a writ of error *coram nobis* are narrower than on habeas corpus [citation]; the writ's purpose 'is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court.' " (*Ibid.*)

"The writ of *coram nobis* is granted only when three requirements are met.  (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.]  (2) Petitioner must also show that the 'newly discovered evidence [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.' [Citations.]  This second requirement applies even

---

4     Read in context, it appears the interpreter who explained this comment meant to refer to Gowolo's attorney when he said, "the dependent."

10

though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ . . . .' " (*Shipman*, *supra*, 62 Cal.2d at p. 230; *Kim*, *supra*, 45 Cal.4th at p. 1093 [confirming that the *Shipman* factors "continue to outline the modern limits of the writ"].)

As the *Shipman* factors illustrate, the remedy is quite narrow. It is not a vehicle for correcting errors of law. (*People v. Vivar* (2021) 11 Cal.5th 510, 522 (*Vivar*).) Moreover, although the allegedly new fact must have been unknown, it also must have existed at the time of the judgment. (*Kim*, *supra*, 45 Cal.4th at p. 1093.) "Finally, the writ of error *coram nobis* is unavailable when a litigant has some other remedy at law." (*Ibid.*)

We review the denial of a petition for writ of error *coram nobis* for abuse of discretion. (*Kim*, *supra*, 45 Cal.4th at p. 1095.)

C.  Analysis

The People acknowledge that the court's reasoning—that the fact that Gowolo did not use his interpreter during the 2022 hearing demonstrated that he did not previously need an interpreter—may not have been a proper basis upon which to deny the petition. We agree. However, " ' "[n]o rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." [Citation.]' " (*People v. Zapien* (1993)

11

4 Cal.4th 929, 976.)  Here, the People point out that the crux of Gowolo's claim was that he had a right to an interpreter so he could enter a knowing and intelligent plea, which raised an issue of law, not one of fact.  Because a court cannot grant *coram nobis* relief for errors of law (*Vivar, supra,* 11 Cal.5th at p. 522), the People contend the court correctly denied the petition.

It is true that, to the extent Gowolo argued the unknown facts were that the court was required under Article I, Section 14 of the California Constitution to provide him with an interpreter or that his plea was not knowing and voluntary under federal law because he was not provided an interpreter to help him understand, these facts raise issues of law not curable via *coram nobis* relief.  (See *Vivar, supra,* 11 Cal.5th at p. 522.)  However, even if we reframe them as issues of fact, Gowolo still does not prevail.

In essence, the purportedly unknown facts were that Gowolo did not know he had the right to make clear to the court that he was not sufficiently understanding the proceedings, even when his attorney did not do so, or that the relevant information had to be told to him in a language and a way he understood.  Gowolo argues *coram nobis* relief is an appropriate remedy in such circumstances.  He maintains that the cases in which a petition for writ of error *coram nobis* was granted support his position because they all involved parties lacking some fundamental competency or capacity to fully participate in court proceedings and/or whose full participation in court proceedings had been hindered by the acts of others in the system.  He refers the court to the following list of examples cited in *Kim*:

> " 'Where the defendant was insane at the time of trial and this fact was unknown to court and counsel [citations].  Where defendant was an infant and appeared by attorney without the appointment of a guardian or guardian *ad litem* [citations].  Where the defendant was a *feme covert*

12

and her husband was not joined [citation]. Where the defendant was a slave and was tried and sentenced as a free man [citation]. Where the defendant was dead at the time judgment was rendered [citations]. Where default was entered against a defendant who had not been served with summons and who had no notice of the proceeding [citations]. Where counsel inadvertently entered an unauthorized appearance in behalf of a defendant who had not been served with process [citation]. Where a plea of guilty was procured by extrinsic fraud [citation]. Where a plea of guilty was extorted through fear of mob violence [citations]. Where defendants and their counsel were induced by false representations to remain away from the trial under circumstances amounting to extrinsic fraud [citation]. Where by the failure of the clerk to properly file an answer the party was deprived of his defense [citation].' "

(*Kim*, *supra*, 45 Cal.4th at p. 1094, fn. omitted.) In Gowolo's view, someone who does not speak the court's language and who is not provided an interpreter fits into this rubric.

The shortcoming of this argument is that the alleged facts must have " 'prevented the rendition of the judgment.' " (*Shipman*, *supra*, 62 Cal.2d at p. 230.) Under applicable criminal law at the time the cited cases were heard, a court could not legally enter a judgment against, to cite a few examples, someone deemed legally insane, a child without a guardian, or a deceased person. In other words, these facts went to "the legal competence of witnesses or litigants, or the jurisdiction of the court." (*Kim*, *supra*, 45 Cal.4th at p. 1103.) Knowledge of these critical facts would have actually barred the court from rendering judgment.

Here, again, the purportedly unknown facts were that Gowolo did not know he had the right to tell the court that he was not sufficiently

13

understanding the proceedings and that the court had to explain the relevant information to him in a language and a manner he understood.[5] However, had these facts been known and had Gowolo received the assistance of a Bari interpreter, his decision upon receiving a full understanding of the plea bargain being offered would have been to either agree to the plea deal or go to trial. Should he have opted for a trial, he would then have received the assistance of an interpreter and been subject to whatever judgment the jury or court rendered. In other words, in neither scenario would discovery of the previously unknown fact of his language barrier have *prevented* rendition of a judgment.

In *Kim*, the defendant had lived in this country legally for decades but had never become a citizen. (*Kim*, *supra*, 45 Cal.4th at p. 1084.) Following multiple criminal convictions, the federal government sought to deport him. (*Ibid.*) Kim petitioned for a writ of error *coram nobis*, seeking to vacate the state felony convictions that triggered his federal removal proceedings. (*Ibid.*) Our high court determined that Kim was not entitled to writ relief for procedural reasons and on the merits. (*Id.* at p. 1096.)

On the merits, the Supreme Court explained that the defendant's "allegations that he would not have pleaded guilty had he been armed with these additional facts,[6] or that counsel would have been successful in

---

5      As Gowolo's own letter and his defense attorney's later statements made clear, Gowolo understood that he was pleading guilty. He just did not understand the legal significance of pleading to two strikes.

6      Kim had claimed he was not aware when he entered a plea to petty theft with a prior that it would subject him to deportation. (*Kim*, *supra*, 45 Cal.4th at p. 1096.) He also said he did not know at the time of the plea that "' if deported, he would almost certainly face religious persecution.' " (*Ibid.*)

14

arranging a plea to a nondeportable offense had these facts been known, fundamentally misapprehends the pertinent inquiry." (*Kim, supra,* 45 Cal.4th at pp. 1102–1103.) The court made clear that "[n]ew facts that would merely have affected the willingness of a litigant to enter a plea, or would have encouraged or convinced him or her to make different strategic choices or seek a different disposition, are not facts that would have prevented rendition of the judgment." (*Id.* at p. 1103.) These are exactly the sort of facts Gowolo presents here. Having the benefit of an interpreter to help him ensure he understood the concept and ramifications of strikes may have affected his willingness to enter the plea or induced him to make different strategic choices, but it would not have altered his legal competence to stand trial or to have a judgment entered against him. His argument fails as a matter of law.

Accordingly, we conclude Gowolo was not eligible for writ relief and, thus, the court did not abuse its discretion in denying the petition.

## II.

### *Sentencing*

Gowolo next asserts that the court abused its discretion at sentencing by failing to consider a presumptive low-term sentence due to his childhood trauma and mental illness. Alternatively, he argues that even if the court considered the low term, it abused its discretion by not imposing the low term. The People respond that Gowolo forfeited this argument by failing to raise any issues below regarding the scope of the court's discretion. We agree.

Section 1170, subdivision (b)(6), upon which Gowolo seeks to rely, became effective on January 1, 2022. (§ 1170, subd. (b)(6)(A).) Gowolo was sentenced a year and a half later on July 19, 2023. Thus, we presume the

court and counsel were well-aware of this change to the law.  (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [the general rule is " 'that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]' "]; *People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*) ["counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing"].)  Gowolo could have argued for a low-term sentence under this provision based on his allegations of trauma and mental illness or objected to the sentence imposed.  He did not, and therefore, he has forfeited any claim to relief pursuant to section 1170, subdivision (b)(6)(A).  (See *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 [finding forfeiture where the defendant "did not seek the lower term based on section 1170, subdivision (b)(6); object to the imposition of the middle term; or argue that defendant suffered any psychological trauma as a result of mental illness"]; see also *Scott*, at p. 353 [the forfeiture rule applies "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)

Gowolo contends counsel preserved his claim by discussing his alleged trauma, suggesting that minimal jail time with a treatment program would be most appropriate, and arguing for imposition of a sentence of only eight or nine years.  Although admittedly imprecise, he argues this request would most realistically be achieved with a low-term sentence.  However, the purpose of the forfeiture doctrine is to encourage parties to call routine defects in the court's statement of reasons to the court's attention so that they may be easily corrected.  (See *Scott, supra*, 9 Cal.4th at p. 353.)  The information Gowolo cites did nothing to bring the alleged *errors* to the court's attention in a timely manner.  In other words, his statements did not alert the court that if it accepted Gowolo's allegations of trauma and mental

16

illness, it was required to consider the low-term and had erred by seemingly not doing so.

Gowolo also reasons that we should exercise our discretion to address his claims on the merits because his entitlement to relief turns on two California Supreme Court cases that were decided after he was sentenced. Specifically, he argues that *People v. Salazar* (2023) 15 Cal. 5th 416, 427 (*Salazar*) held that section 1170, subdivision (b)(6) established a "presumption" in favor of a low-term sentence. He further submits that *People v. Walker* (2024) 16 Cal.5th 1024, construed the related provisions in section 1385, subdivision (c) and explained how courts should go about finding the presumptively lenient sentencing outcome overcome. In his view, because the court lacked this binding guidance, remand is required.

We disagree. *Salazar* did not alter the plain reading of section 1170, which already require that "the court *shall* order imposition of the lower term if . . . [¶] [t]he person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence" (italics added) unless aggravating circumstances outweigh the mitigating circumstances such that "imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6)(A).) In *Salazar*, the prior version of section 1170 was in effect at the time of Salazar's sentencing (*Salazar*, *supra*, 15 Cal.5th at p. 423), whereas here the new statutory language had been the law for over a year before Gowolo's sentencing. As such, the presumption was apparent from the statutory language itself.

Gowolo's reliance on *Walker* to overcome the forfeiture is equally unpersuasive as his argument presupposes that he had established he was entitled to a presumptively lenient sentence, which is not clear in this case. He argues the *Walker* court interpreted the phrase "contrary to the interests

17

of justice" in a "defendant-friendly" way and that the same phrase in section 1170 should be similarly interpreted.  However, the *Salazar* court did not set standards for determining whether the defendant suffered a "qualifying trauma" under section 1170, subdivision (b)(6)(A) because the Attorney General in that case conceded that Salazar suffered a qualifying trauma.  (*Salazar*, *supra*, 15 Cal.5th at p. 426, fn. 5.)  That does not appear to be the case here.  And, although Gowolo's attorney presumed Gowolo experienced trauma in Sudan, he offered few facts in support of his assertion and there is no evidence in the record that the court made a finding on this issue.  Thus, Gowolo cannot overcome his failure to raise the issue by saying the court did not have the benefit of a case he has not demonstrated the court would have been required to consider.

Accordingly, we conclude Gowolo forfeited his sentencing challenge.

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

I CONCUR:


KELETY, J.

I CONCUR IN THE RESULT:


BUCHANAN, J.


18